**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **THE WAY TRAINING CENTER** | § | **CIVIL ACTION NO. 2:25-cv-00033** |
| **AND GERARD MORGAN** | § | |
| *Plaintiffs* | § | |
| **v.** | § | |
| | § | |
| **THE CITY OF JENNINGS** | § | |
| **AND HENRY GUINN**, in his | § | |
| official and personal capacities | § | |
| *Defendants* | § | **JURY DEMAND HEREIN** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN,** for their Original Complaint against Defendants, **THE CITY OF JENNINGS and HENRY GUINN, both in his official and personal capacity.** Plaintiffs hereby state as follows:

**PARTIES**

1. Plaintiff, The Way Training Center (hereinafter, "The Way"), is a 501(c)(3) corporation organized under the laws of the State of Louisiana with its registered office in Crowley, within Acadia Parish, State of Louisiana.

2. Plaintiff, Gerard Morgan (hereinafter, "Mr. Morgan"), is The Way's executive director and is an individual of the full age of majority who is domiciled in Crowley, within Acadia Parish, in the State of Louisiana.

3. At all times relevant to this suit, Mr. Morgan, in his capacity as The Way's executive director, has been the primary officer of the corporation responsible for handling all matters

1

pertaining to the property located at 203 S. Louise Street (hereinafter, "the Property"), which is at the core of this complaint.

4.  Made Defendants herein are:

    a.  **THE CITY OF JENNINGS** (hereinafter, "the City"), a political subdivision of the State of Louisiana, which may be served through its agent for service of process, Mayor Henry Guinn, at 154 N. Main Street, Jennings, Louisiana 70546.

    b.  **HENRY GUINN** (hereinafter, "Mayor Guinn"), an individual of the full age of majority,  in his individual capacity and in his official capacity as Mayor for the City, who may be served at 154 N. Main Street, Jennings, Louisiana 70546.

5.  All Defendants in this suit, who are named now, in the past, or to be named in the future, are justly and truly indebted, individually and *in solido*, unto Plaintiffs for such sums and damages owed by any and all of their acts or omissions as discussed herein and/or discovered through the pendency of the litigation at hand.

---

## JURISDICTION AND VENUE

---

6.  Plaintiffs bring this action for damages and injunctive relief under various provisions of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Fourth and Fourteenth Amendments of the United States Constitution, and/or La. R.S. § 2315. This Court has jurisdiction pursuant to the following statutes:

    a.  28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

    b.  28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government; and

    c.  28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over Plaintiffs' Louisiana state law claims, all of which share a common nucleus of operative fact with the federal claims plead herein.

7.  Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events that give rise to this Complaint, which center around property located in Jennings, Louisiana, occurred in the Western District of Louisiana, specifically in Jefferson Davis Parish, making the Lake Charles Division the most appropriate division for this suit.

---

## STATEMENTS OF FACT

---

### BACKGROUND ON THE WAY

8.  The Way is a 501(c)(3) nonprofit corporation in good standing with the State of Louisiana.

9.  The Way is a compassion ministry originating from the Northside Assembly of God, which is a church located in Crowley, Louisiana.

10.  The Way is affiliated with the Christian faith, and its sincerely held religious beliefs motivate The Way to minister and provide life-changing support to individuals who struggle with life-controlling issues, particularly addiction, while sharing the Gospel of Jesus Christ.

11. The Way's sincerely held beliefs and practices find their roots in the Bible, including but not limited to the following verses:

   a. "Go therefore and make disciples of all the nations, baptizing the, in the name of the Father and of the Son and of the Holy Spirit, teaching them to observe all that I have commanded you…" *Matthew* 28:19-20.

   b. "Let your light shine before men, that they may see your good works, and glorify your Father which is in heaven." *Matthew* 5:16

   c. "Blessed is the one who does not walk in step with the wicked or stand in the way that sinners take or sit in the company of mockers, but whose delight is in the law of the Lord, and who meditates on His law day and night." *Psalms* 1:1-2.

   d. "Therefore, if anyone is in Christ, the new creation has come. The old has gone, the new is here!" *2 Corinthians* 5:17.

12. In furtherance of its mission, The Way opened and has operated a successful, faith-based sober living facility in Crowley, Louisiana (hereinafter, the "Crowley Facility") since 2018.

13. The Way's Crowley Facility has a 73% success rate.

14. The Way's Crowley Facility houses approximately seventy (70) students at any given time.

15. Students enrolled in The Way's program must live at the facility and participate in the program for a minimum of twelve (12) months. Students cannot graduate from the program until completing the curriculum and securing both a job and housing accommodations.

16. Living together in the same facility for this length of time is key to students' recovery, as they live in a family-like, Christ-centered atmosphere in which they support themselves and each other with the help and guidance of The Way staff; without living in such an

environment, students would lack the support and resources necessary to aid in their recovery and prevent relapses.

17. The program employed by The Way is religious in nature, requiring students to read daily devotionals and attend chapel or church services almost daily.

18. Applicants with criminal histories of violence or who may otherwise pose a threat to the community are not accepted into the program.

19. The Way does not accept applicants who remain in active addiction because the program is not a rehabilitation program. The Way's program supports the continued, sober living of individuals who have previously overcome active addiction.

20. The Way's students cannot use illicit substances, alcohol, or tobacco while enrolled in the program.

21. The Way's program currently only accepts male students; however, The Way has undertaken extensive efforts to open an additional facility so that it can extend its services to women and/or their young children.

22. The Way acquired property located at 203 S. Louise Street in Jennings, Louisiana, in February 2024 (hereinafter, the "Property"). The Way acquired the Property for the specific purpose of operating another such church/facility therein.

23. Upon relocating its male students to the Property, The Way plans to use the Crowley Facility to house women and their young children who are in need of help.

24. Because Plaintiffs have been unable to repair the Property, The Way has no sizable facility to house women and children, despite there being a dire need in the area for the same.

25. Since October 2022, The Way has received an average of approximately twenty-eight (28) inquiries each month in the form of phone calls or walk-ins of people seeking aid for women and children.

26. An estimated seven hundred-fifty (750) people have sought help for themselves or women/children who are in need of the type of support The Way provides to men. The Way has resorted to referring them to other facilities, some of which are not nonprofits like The Way and therefore may not be a viable option for many of those in need.

## ZONING ISSUES

27. The City is governed by the Jennings Code (hereinafter, the "Code"), which includes numerous zoning and permitting provisions that are enforced by the City's mayor, zoning commission, and city council.

28. The building on the Property predates the implementation of the Code and all zoning ordinances incorporated therein.

29. Because the building on the Property predates the creation of this zone, the Property enjoyed nonconforming use status for decades.

30. Previous owners of the Property operated a nursing home. Subsequent to its use as such, Acadian CARES acquired ownership of the Property.

31. The City has asserted that the Property lost its nonconforming use status after being unoccupied for a period of at least three (3) months at some point before Mr. Morgan acquired the Property.

32. The Property is situated in an A-1 Residential District, in which the Code now explicitly permits single-family dwellings and churches.

33. In 2022, Mr. Morgan met with Mayor Guinn to discuss rezoning and acquiring the Property, at which time Mayor Guinn told him it would be an "uphill battle" to rezone.

34. Mr. Morgan inquired about rezoning because Mack Hessifer (hereinafter, "Hessifer"), a code enforcement officer for the City, and Phillip Arceneaux (hereinafter, "Inspector Arceneaux"), the city inspector, advised Mr. Morgan that the Property needed to be rezoned before he could repair or occupy it.

35. In September 2023, Mr. Morgan contacted City Hall via telephone to inquire about rezoning and left a message for Mayor Guinn. Mayor Guinn never returned Plaintiff's call. Mr. Morgan subsequently emailed Mayor Guinn and requested a meeting with him to discuss the rezoning, and Mayor Guinn never responded to Mr. Morgan's email.

36. In early October 2023, Mr. Morgan submitted an application, seeking to rezone the Property from A-1 to A-6, as advised by City building officials and/or code enforcement officers.

37. While not expressly prohibited in A-6 zones, churches are not permitted as of right to exist in A-6 zones, nor are sober living facilities.

38. Before Mr. Morgan submitted his rezoning application, then-City Attorney Derek Bisig (hereinafter, "Bisig") asked Mr. Morgan to submit additional documents, including:

   a. The Buyer-Seller Agreement between Acadiana CARES and The Way, the signing of which was initially contingent on rezoning the Property;

   b. A list of The Way's board members;

   c. A resolution from The Way's board giving it permission to purchase the Property and seek rezoning;

   d. Evidence of The Way's financial ability to bring the building up to code;

    e.   Documentation from an electrical contractor to ensure electric could be brought to code, as well as a bid for such work;

    f.   Documentation that a general contractor has or would evaluate the building and provide a bid for work, as well as proof that The Way could afford to pay for such work;

    g.   Documentation from an architect showing a projection of the building's post-repair appearance; and

    h.   An environmental report on the Property;

39. Mr. Morgan subsequently submitted a sufficient rezoning application.

40. On October 2, 2023, Mayor Guinn texted Councilman Johnny Armentor (hereinafter, "Councilman Armentor")  and asserted that the Property was not "the right location for a rehab…"

41. On December 6, 2023, Councilman Armentor called Mr. Morgan and told him that Mayor Guinn wanted to set up a meeting with Mr. Morgan to refund the money he paid for the rezoning application because the application would not be approved.

42. On December 7, 2023, Mr. Morgan met with Mayor Guinn and Bisig, at which time Mayor Guinn offered to refund the application fee to The Way. Mr. Morgan refused Mayor Guinn's attempt to refund the application fee and indicated to Mayor Guinn that The Way wanted to proceed according to the standard rezoning process and/or procedure.

43. During the December 7, 2023 meeting, Mayor Guinn offered Mr. Morgan another building, which had previously been used as an educational facility. Mayor Guinn admitted to Mr. Morgan that the building was full of asbestos.

44. On December 21, 2023, Mr. Morgan learned that Mayor Guinn had appointed former Jennings Mayor Terry Duhon (hereinafter, "Commissioner Duhon") and Cy Sittig (hereinafter, "Commissioner Sittig") to the Zoning Commission.

45. Commissioner Duhon resides approximately two (2) blocks from the Property, and Commissioner Sittig's parents, Rochelle and Ricky Sittig, reside at 102 Roberta Avenue, which intersects Louise Street.

46. At City Council meetings in early 2024, Commissioner Duhon, the Sittigs, and Mayor Guinn's father, Tim Guinn, spoke out against The Way operating near their homes.

47. Upon information and belief, around mid-December 2023, Rochelle Sittig and others began circulating in the neighborhood a petition to oppose The Way's rezoning application.

48. Said petition reads as follows: "Attached is a copy of the notification of a meeting of the Planning and Zoning Board on **January 9, 2024 at 4:30 p.m.** to change the attached described property from A-1 Residential to A-6 Zoning. By signing this petition below, I oppose the re-zoning of the attached described property from A-1 to A-6 for the reasons listed; **The Training & Drug Rehabilitation Center** location proposed would be in our area which is predominantly residential, it will destroy the character of our neighborhood, it may allow later for undesirable structures to locate because of the A-6 Classification, it will lower the residential property value of our homes, it will increase traffic into a residential area, it will be harmful for our young children in the neighborhood because of the increased traffic and the amount of non residential people in and out our neighborhood area. No one owning a home would want increased business activity around his or her home or neighborhood."

49. This petition was signed by Commissioner Duhon's wife, Judy Duhon, Commissioner Cy Sittig's parents, and Mayor Guinn's parents.

50. On December 28, 2023, Mayor Guinn sent a text message to Councilman Armentor, therein ordering Councilman Armentor to find "an appropriate spot for The Way" because "neighbors are coming out of everywhere in opposition." Councilman Armentor responded, "That is the perfect spot." Mayor Guinn responded, "Quit stirring the pot or I'll make sure the entire council is named on the litigation to follow."

51. On January 9, 2024, the Zoning Commission voted 6-2 to recommend that the City Council deny the rezoning application.

52. At the Zoning Commission meeting, Commissioners Duhon and Sittig both participated in the discussions and voted. By doing so, they both acted in deliberate violation of La. R.S. § 42:1112, which prohibits public employees from participating in transactions in which they or those persons/entities close to them have a substantial economic interest.

53. Plaintiffs' counsel submitted a formal complaint of such to the Louisiana Ethics Board, which has jurisdiction over such violations, on December 13, 2024. The complaint is on the docket for the Ethics Board's February 6, 2025 executive meeting.

54. On January 9, 2024, after the conclusion of the Zoning Commission's meeting, the City Council met and voted 4-1 to approve the introduction of an ordinance to rezone the Property, thereby overturning the decision of the Zoning Commission.

55. During the January 9, 2024 City Council meeting, Mayor Guinn publicly stated that, prior to voting, council members needed to consider the potential for litigation that could come from passing the ordinance.

56. After the City Council meeting, Mayor Guinn texted Councilman Clifton LeJeune (hereinafter, "Councilman LeJeune"), a pastor who voted in favor of introducing the ordinance,  around midnight to criticize and question Councilman LeJeune's faith, intelligence, and genuineness of his support for The Way. Part of the message reads: "I'll pray for my city tonight. I'll also pray we're speaking to the same god."

57. At some point after the January 9, 2024 City Council meeting, the City retained attorney Gary McGoffin (hereinafter, "Special Counsel McGoffin") to serve as its special counsel. The City's retention of Special Counsel McGoffin was neither discussed at the meeting in front of the public, nor was it discussed at any point with all Council members.

58. Days prior to the next City Council meeting, which took place on February 13, 2024, Special Counsel McGoffin issued a formal letter to council members, in which he cited ethics rules and raised questions about Councilman Armentor's vote at the previous meeting because his son had been employed by The Way but resigned before a vote was taken.

59. In this letter, Special Counsel McGoffin warned that council members needed to be careful how they voted going forward because they could be fined up to $10,000 for ethical violations.

60. On Feb. 10, 2024, just three (3) days before the next Council meeting, City Council President Steven VanHook (hereinafter,"VanHook") called Mr. Morgan to discuss rezoning while Mr. Morgan, an associate pastor, was in church.

61. Mr. Morgan had previously reached out to VanHook, seeking to meet with him and  discuss rezoning of the Property, approximately ten (10) times between mid-October and December 2023. VanHook was never receptive to setting up a meeting.

62. On February 11, 2024, Mayor Guinn sent a text message to Councilman Armentor, which reads, "I would stay off Facebook and read the opinions of our attorneys handling this matter. It can have serious consequences on council members and general operations of city government. Don't play lightly with it…"

63. At the February 13, 2024, Council meeting,  the Council voted on the adoption of the ordinance to rezone the Property.

64. Mayor Guinn continuously interjected during  the meeting, speaking out of turn.

65. Commissioner Duhon, Commissioner Sittig's parents, and Mayor Guinn's father spoke against the rezoning the Property.

66. City officials asserted that a two-thirds (2/3) vote was required to pass the ordinance and overrule the Zoning Commission's recommendation to disallow the rezoning, meaning four (4) of the five (5) council members needed to vote in the affirmative to pass the ordinance.

67. While the Code explicitly requires such a vote to overrule a Zoning Commission recommendation, the Code does not explicitly state that such a vote is required at *both* City Council meetings in which the ordinance is discussed. Because the introduction of the ordinance had previously passed by a two-thirds (2/3) vote, it is unclear whether such a vote was actually required to pass the ordinance at the second meeting or if a simple majority vote would have sufficed.

68. The motion to adopt the ordinance failed to receive a two-thirds (2/3) passing vote, with three (3) council members voting in the affirmative, one (1) voting in the negative, and one (1) abstaining from voting altogether.

69. VanHook voted in the negative, while Councilman Anthony "Coach" LeBlanc, who had voted in the affirmative in the January meeting to introduce the ordinance, abstained from voting to adopt the same at the February meeting.

70. Special Counsel McGoffin was present at the February meeting and read from the February 2024 letter that he had disseminated to council members prior to council members discussing and voting on the adoption of the ordinance.

71. Councilman LeJeune said at the February meeting that Special Counsel McGoffin's presence at the meeting was intimidating to council members, especially in light of the threats of fines outlined in Special Counsel McGoffin's February 2024 letter. Other concerned citizens spoke at the meeting and shared this sentiment.

## DRONE SURVEILLANCE OF THE WAY'S PROPERTIES

72. The Way operates The Way 2 Thrift store in Jennings, Louisiana, and it uses the funds it earns there to support the mission and program of The Way. Mr. Morgan has previously met with council members at that location to discuss matters related to operating The Way at the Property.

73. On February 16, 2024, Mr. Morgan filmed a drone flying over The Way 2 Thrift. The drone came directly above Mr. Morgan's person.

74. On July 2, 2024, Mayor Guinn posted from his personal Facebook account photos of the Property taken by a drone to a page designated to promote the free speech of Jennings residents.

## GUINN'S INTENTION TO TAKE OWNERSHIP OF PROPERTY

75. On February 21, 2024, Acadiana CARES donated the Property to The Way.

76. On March 5, 2024, Mayor Guinn offered Mr. Morgan a City-owned building that had previously been used as a National Guard armory (hereinafter, the "Armory Building").

77. The same day, Mayor Guinn directed a City employee to show Mr. Morgan the Armory Building. Mr. Morgan determined that the Armory Building would need a significant amount of work, and would require several millions of dollars in repairs, in order to be suitable to house The Way's students.

78. On March 6, 2024, Mr. Morgan met with Mayor Guinn, VanHook, and Becky Johnson (hereinafter "Ms. Johnson"), who was working with or helping Mayor Guinn in some capacity, to discuss the possibility of The Way operating from the Armory Building. During this meeting, the following transpired:

   a. Mayor Guinn told Mr. Morgan that he wanted to essentially "swap" properties, with Mr. Morgan/The Way giving the City the Property and the City leasing the Armory Building to them in return.

   b. Mr. Morgan immediately and explicitly rejected Mayor Guinn's proposal because The Way already owned the Property–as opposed to merely renting it–and Mr. Morgan did not want to forfeit the Property.

   c. As part of the discussion, Mr. Morgan offered to 1) purchase the Armory Building, rather than receive it in a land swap, and 2) eventually house The Way residents in the Armory Building and use the Property as a church. Mayor Guinn rejected this offer and made it clear that he/the City would refuse to sell, lease, or donate the Armory Building if Plaintiffs would not give the City the Property.

   d. Specifically, Mayor Guinn admitted that his proposed land swap of the properties with different appraisal values was not "apples to apples" but that he nevertheless

was willing to "offer an olive branch" to get Mr. Morgan into Jennings without lengthy court battles regarding the Property's designation as a church, which could "take [Mr. Morgan] two years."

e.  Mayor Guinn indicated that in order for Mr. Morgan to put a church on the Property, he would need to "demo it and build you a beautiful chapel and help get people to tithe and fund the church."

f.  Mayor Guinn then said, "...you can't keep 60 people overnight sleeping and rehabilitating them, according to your federal tax returns, of a drug rehabilitation clinic in a residential neighborhood. That would be contested in court."

g.  Mayor Guinn asked Mr. Morgan how he would obtain the permits necessary to make repairs to the Property. Mayor Guinn then effectively told Mr. Morgan that, even if the State Fire Marshal gave the necessary approval that is a prerequisite to obtaining building permits from the City, the City would not grant Mr. Morgan such permits if Mr. Morgan planned to use the Property as a church.

h.  After that exchange, Ms. Johnson indicated to Mr. Morgan that Jennings residents would oppose The Way regardless of whether the Property operated as a church or not because they would still think the Property would be the site for a "rehab."

i.  Ms. Johnson then said, "[Residents will] be against it anyhow... I feel like it's gonna open up the door for those people to go and get some lawyers... and they're gonna file suit, either against the City or [Mr. Morgan] or both."

j.  Ms. Johnson further said, "God didn't want it to be this hard. He just didn't. Why is it so hard? I think if it was meant to be, everything would be easier, everything would flow…"

k.  Mayor Guinn told Mr. Morgan, "You think you're immune from everything, and you think that if you pray to God the right way that this is all gonna fall into place, because, 'I, Gerard Morgan, don't have to follow laws or rules because I'm immune.' 'I'm gonna instill my will on everybody whether they like it or not.' 'I'm gonna instill it on them, and I'm gonna open my church without the fire marshal's approval because that's–'"

l.  Mr. Morgan reiterated that he would open a church at the Property and that he would receive fire marshal approval to do so.

m.  Mayor Guinn replied that people are "foaming at the mouth" to file suit to stop The Way from operating at the Property.

n.  At one point, Mayor Guinn bluntly said, "Give me the title for 203 [South Louise Street]."

o.  Throughout the entirety of the meeting, Mayor Guinn was not receptive to Mr. Morgan's plans to use the Property as a church and kept saying the Property is improperly zoned, despite admitting in the meeting that churches are allowed in A-1 zones.

### UNAUTHORIZED ENTRY ONTO AND SEARCH OF PROPERTY

79. On March 4, 2024, the City authorized a third party, Air Environmental Services (hereinafter, "AES"), to conduct an inspection of the Property without the authorization of or notice to Mr. Morgan or anyone else associated with The Way.

80. Notably, no complaints had been submitted to the State Fire Marshal concerning the Property around that time, nor did the State Fire Marshal order or otherwise authorize the inspection.

81. The Property had been locked, yet unknown persons, at the behest of the City, were able to gain entry to conduct the inspection without the permission or presence of Mr. Morgan or any other authorized person acting on The Way's behalf.

82. Mr. Morgan did not become aware of the March 4, 2024 inspection until March 20, 2024, when Hessifer emailed Mr. Morgan a copy of the asbestos report based on the unauthorized inspection ordered by the City.

83. That day, Mr. Morgan also learned that Inspector Arceneaux had contacted third parties to inquire about having an inspection of the Property done because the City was preparing to demolish the building.

84. Upon information and belief, Inspector Arceneaux has been working in the capacity of a code enforcement officer in the City for a number of years without being properly registered with the appropriate State agency in violation of La. R.S. § 40:1730.36 *et seq.*

### GUINN'S ATTEMPTS TO INFLUENCE CITY COUNCILMAN'S VOTE

85. On March 9, 2024, Mayor Guinn sent a screenshot of a Facebook post critical of Mayor Guinn's temperament and leadership, the creator of which is unknown, to Councilman Armentor along with the following message: "This is a The Way supporter…This is what my family and I deal with because of you, an alleged friend, life long employee of Guinn's, continue to stir the pot instead of taking a firm stance that it's all lies and hate… This is the new Jennings created by Cliff LeJeune, Johnny Armentor, Gerard Morgan and his followers… To say I'm disappointed is an understatement."

86. Sometime before the March 12, 2024 Council meeting, where council members would have the chance to discuss the condemnation and/or demolition of the Property, Mayor Guinn sent a text message to Councilman Armentor that reads, "Remember [you]

unanimously voted to demo acadiana cares… don't show too much favoritism March 12."

**CITY'S INTERFERENCE WITH PROPERTY USE AND ENJOYMENT**

87. On March 13, 2024, Mr. Morgan met with Hessifer to discuss obtaining the permits necessary for him to conduct repairs on the Property. Mr. Morgan was unable to obtain the required permits.

88. On March 13, 2024, Mr. Morgan also sought to have the water turned on at the Property. After Mr. Morgan handed a check for such to the City employee handling the matter, Mayor Guinn called the employee and instructed her to not allow the water to be turned on at the Property. There was no reason given for this order, yet the employee followed it.

89. Upon information and belief, before Mayor Guinn told the City employee to not allow water to be turned on for the Property, the employee charged Mr. Morgan $375.00, which was more than double the price for turning on water at that time. The employee then returned the check to Mr. Morgan.

90. On the morning of March 19, 2024, Mr. Morgan met with Rodney "Cooney" Richard (hereinafter, "Richard"), a code enforcement officer for the City. Richard told Mr. Morgan that Mr. Morgan could only secure the building from further damage and that permits were required for additional work.

91. Upon information and belief, in March 2024, after the City prevented Plaintiffs from making necessary repairs to merely secure the Property, the Property was burglarized. Copper wire, scrap metals, and other items were stolen, and parts of the Property were damaged.

92. On June 15, 2024, Mayor Guinn texted photos of Mr. Morgan merely putting lights on the outside of the Property to Mr. Morgan and asked Mr. Morgan if he had any plans to submit to the city inspector. Mayor Guinn sent these text messages to Mr. Morgan using his personal cell phone, despite his previous demand to Mr. Morgan on March 13, 2024 that Mr. Morgan no longer contact him on his personal phone.

93. On June 26, 2024, Richard emailed Mr. Morgan, informing him that, while cosmetic work does not require a permit, anything beyond cosmetic work would require a permit. Richard apologized for any confusion on what type of work requires a permit in reference to Mr. Morgan's previous inquiries about conducting roof and cosmetic repairs.

94. On June 26, 2024, Hessifer, accompanied by City police, posted a "stop work order" on the Property.

95. On June 27, 2024, Mr. Morgan emailed Richard in an attempt to receive additional clarification on obtaining a building permit. At this point, Richard ceased all communication with Mr. Morgan.

96. On June 27, 2024, Mr. Morgan spoke to Hessifer about the requirements for obtaining a permit to repair the roof. Hessifer told Mr. Morgan that he needed needed the following information for his permit request:

    a. The scope of the project; and

    b. The estimated cost.

97. On June 28, 2024, Mr. Morgan dropped off his permit application with the required documents.

98. That same day, Mr. Morgan received a cease and desist letter regarding his attempt to repair the roof.

99. Mr. Morgan was then notified that The Way needed a general contractor to pull the permit to repair the roof. The City refused to give Mr. Morgan a permit.

100.    Section 3.101 of the Code provides the following criteria for obtaining building permits:

    a.    An application from the City and the city inspector's certification that the plans and intended use of the land, buildings, and structures are in conformity with the ordinance.

    b.    A plat drawn to scale showing actual dimensions of the lot to be built on; the size, shape, and location of the buildings to be erected, as well as the estimated cost thereof; and

    c.    "Any such other information as may be required by the inspector ensuring proper enforcement of this ordinance."

101.    Section 3.101 further indicates that it "shall be enforced by an inspector appointed by the mayor and the city council of the City of Jennings…"

102.    Despite the explicit text of Section 3.101, Inspector Arceneaux, the official city inspector appointed by Mayor Guinn, does not have the authority to perform code enforcement actions, such as granting or denying building permits, because he is not properly registered as proscribed by La. R.S. § 40:1730.36.

103.    Mr. Morgan was unaware of the codified criteria because the Code, which contains said criteria, is not readily accessible to the public.

104.    Mr. Morgan reasonably relied on the requirements and instructions provided to him by two (2) different people acting as City code enforcement officers; however, he was still

denied a permit and was not provided with the aforementioned relevant ordinance that actually sets forth the prerequisites to obtaining a building permit.

105.    On July 18, 2024, Arceneaux and a representative from the State Fire Marshal's Office came to the Property and informed Mr. Morgan that he could not perform work to change the structure of the building but could make cosmetic repairs.

## FORMAL REQUESTS FOR CITY TO RECOGNIZE THE WAY AS A CHURCH AND/OR TO GRANT REASONABLE ACCOMMODATIONS

106.    On Oct. 29, 2024, Mr. Morgan sent the City a demand letter with the following demands and requests:

    a.  The City should allow Mr. Morgan/The Way to continue enjoying nonconforming use of the property as previous owner(s) did unless and until the City can prove that the Property is no longer subject to such nonconforming use;

    b.  In the alternative to (a), that the City enable Mr. Morgan/The Way to operate the program at the Property because it is a faith-based discipleship program, making it a church, one of the permitted building uses in the A-1 zone;

    c.  In the alternative to (b), that the City grant The Way the reasonable accommodation of categorizing the Property as a single-family dwelling, a permitted use in the A-1 zone, and grant Mr. Morgan all the permits needed for the Property's repair; and

    d.  If the City refused to comply with any of the foregoing, the City should construe Mr. Morgan's previous rezoning application as a request for reasonable accommodations and should allow him to alter and resubmit the same.

107.    Despite the fact that the letter was addressed to Mayor Guinn and City Attorney Wendell Miller (hereinafter, "Attorney Miller"), Plaintiffs' counsel received a response to

this letter from Special Counsel McGoffin, whom the City had retained in January or February of 2024 to address potential ethical concerns related to the January 9, 2024 Council vote. In the City's response, Special Counsel McGoffin indicated he was now the Assistant City Attorney.

108.     Upon information and belief, Special Counsel McGoffin has assumed the role of a municipal attorney without approval by the City Council in violation of La. R.S. § 33:404.

## FORMAL REQUESTS FOR CLARIFICATION ON BUILDING PERMIT REQUIREMENTS

109.     On November 12, 2024, Special Counsel McGoffin explained to Plaintiffs that permits cannot be issued until plans, costs, and ability to fund those costs have been provided to the City "to assure the proposed use and the required renovations can and will be made to obtain a Certificate of Occupancy."

110.     Special Counsel McGoffin further said, "...the City and its officials have accommodated this discussion and afforded Acadiana Cares and The Way every reasonable and realistic opportunity to resolve this matter. However, the relief now requested is inconsistent with those duties."

111.     On November 13, 2024, Special Counsel McGoffin sent Plaintiffs a supplemental correspondence, therein informing them that, absent a meaningful response demonstrating The Way's financial ability to address the code deficiencies detailed in Richard's report, the Fire Marshal requirements, and the AES asbestos report that resulted from an unlawful entry onto the Property, the City will enforce its cease and desist notice and commence condemnation and demolition proceedings.

112.      Plaintiffs, in response, forwarded correspondence to Special Counsel McGoffin explaining that Mr. Morgan is currently seeking repair/building permits, not an occupancy permit, and that Mr. Morgan needs more clarification from the city inspector regarding the requirements for a building permit application, being that the Code provision for such is vague.

## CITY PROVIDED WITH DOCUMENTS EVIDENCING THE WAY IS A CHURCH

113.      On November 18, 2024, Special Counsel McGoffin received documentation proving that The Way is a church, as well as The Way's Articles of Incorporation and Constitution and Bylaws. This correspondence also contained links to The Way's website, which not only explicitly describes the religious nature of its program, but also includes information regarding the success of the Crowley Facility and the stringent requirements to apply for and complete the program. The Way is undeniably faith-based.

## CITY'S CONTINUED REFUSAL TO CLARIFY PERMIT REQUIREMENTS

114.      On November 19, 2024, Special Counsel McGoffin responded to Plaintiffs: "As a general proposition, the necessary information will include specific plans, costs and ability to fund repairs outlined in Mr. Richard's report, the State Fire Marshal inspection and the asbestos report."

115.      On November 20, 2024, Special Counsel McGoffin received a list of more detailed questions pertaining to building permit applications from Plaintiffs because his previous explanations lacked clarification. Plaintiffs' counsel also suggested that they speak over the phone to discuss the requirements in more detail because Special Counsel McGoffin's written correspondences were consistently ambiguous.

116.    The same day, Special Counsel McGoffin responded, refusing to speak to Plaintiffs and merely restating his prior explanation, which was vague and ambiguous. Special Counsel McGoffin wrote that he will discuss the matter in more detail with the City Inspector, the third party that provided the asbestos report, and the State Fire Marshall and will provide a more comprehensive list of requirements.

117.    Rather than addressing all of the specific questions of Plaintiffs' counsel, Special Counsel McGoffin replied to one question, which was whether Mr. Morgan would be able to supplement his application with more information if the City determined after its submission that more criteria needed to be met before the City could grant the permit.

118.    To date, Plaintiffs still lack clarity from the City regarding the requirements for a successful building permit application.

119.    This is distressing to Mr. Morgan, who spoke in depth with Richard, Hessifer, and Inspector Arceneaux in the spring and summer of 2024 and tried to fulfill all additional requirements outside of the Code and the Revised Statutes that each of these individuals advised him of.

120.    Ultimately, Plaintiffs have not been granted a building permit because City officials have kept pushing the goal post and/or refusing to clarify requirements.

121.    The Defendants' actions have undeniably caused the Plaintiffs and the community damage.


*{Remainder of Page Intentionally Left Blank}*

## COUNT I: VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT
### *42 U.S.C. § 2000cc(a)*
### *Substantial Burden Claim*

122.     Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

123.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in his personal capacity only*,** have repeatedly violated Plaintiffs' rights recognized under 42 U.S.C. § 2000cc(a) by implementing zoning ordinances and similar permitting procedures in a way that substantially burdens Plaintiffs' religious exercise.

124.     The Religious Land Use and Institutionalized Persons Act's (RLUIPA) Substantial Burdens provision provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution…" 42 U.S.C. § 2000cc(a)(1).

125.     Under RLUIPA, the term "government" includes municipalities and their officials. 42 U.S.C. § 2000cc-5(4)(A)(i-ii).

126.     The City and Mayor Guinn are part of the "government" for purposes of RLUIPA.

127.     Under RLUIPA, "religious exercise" means any exercise of religion, whether or not compelled by or central to a system of religious belief. This includes the use, building, or conversion of real property for the purpose of religious exercise. 42 U.S.C. 2000cc-5(7)(A) and (B).

128.     By attempting to have the Property recognized as a church or alternatively rezoned so that The Way can move closer to using the Property for religious purposes, Plaintiffs were engaged in religious exercise.

129.     By attempting to clean up, repair, and obtain building permits to further repair the Property in anticipation of using it as a site for The Way, Plaintiffs were engaged in religious exercise.

130.     Under RLUIPA, the term "land use regulation" includes zoning laws or the application thereof that limit or restrict a claimant's use or development of land over which he has an ownership or other property interest, including a contract or option to acquire such an interest. 42 U.S.C. 2000cc-5(5).

131.     Defendants' specific application and implementation of a City zoning ordinance and related permitting procedures toward Plaintiffs are examples of land use regulations that violate RLUIPA.

132.     By refusing to allow The Way to operate as a church in the A-1 zone in which it exists and which Section 2.301(5) of Appendix A of the Jennings Code permits as of right, Defendants have, and continue to, substantially burden Plaintiffs' religious exercise.

133.     By refusing to grant Plaintiffs' building permit application, and by refusing to clarify the requirements for permit applications Plaintiffs must submit in furtherance of their attempt to repair and subsequently use the building as a site for The Way, Defendants have, and continue to, substantially burden Plaintiffs' religious exercise.

134.     The "Substantial Burden" provisions of RLUIPA apply when the substantial burden is imposed in the implementation of land use regulations under which the government makes or is permitted to make individualized assessments of the proposed uses for the property involved. 42 U.S.C. § 2000cc(a)(2)(C).

135.     Defendants made an individual assessment by choosing to refuse to recognize The Way as a church that can exist as of right in the A-1 zone.

136.     Defendants made individual assessments by refusing to grant or clarify the requirements for granting building permits for the type of Property that Plaintiffs possess. Defendants further made an individualized assessment when it clarified only *some* of the building permit requirements and then attempted to reserve its right to later add more requirements for Plaintiff to obtain building permits based on what the city inspector may later decide is additionally necessary.

137.     Defendants' actions described herein have, and continue to, impose substantial burdens on Plaintiffs because the actions have rendered Plaintiffs unable to carry out religious activities at the Property. Plaintiffs have been effectively prohibited from exercising their religion in any meaningful way at the Property.

138.     Defendants have not and cannot identify a compelling governmental interest that justifies the imposition of these substantial burdens. As made clear through repeated communications exchanged by Mayor Guinn, the only "interest" being served by thwarting Plaintiffs' rezoning and/or repair efforts is the personal interest(s) of his family members and friends who reside near the Property.

139.     Even if Defendants could identify such a reason, Defendants could have used less restrictive means to further that interest.

140.     Accordingly, Defendants have, and continue to, violate Plaintiffs' rights as recognized under RLUIPA's Substantial Burden provisions.

141.     Plaintiffs are therefore entitled to judgment in their favor for economic, noneconomic, and punitive damages, as well as costs and reasonable attorney's fees.

*{Remainder of Page Intentionally Left Blank}*

---

## COUNT II: VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT
### *42 U.S.C. § 2000cc(b)(1)*
### *Equal Terms Claim*

---

142.    Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

143.    Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in his personal capacity only***, have repeatedly violated Plaintiffs' rights recognized under 42 U.S.C. § 2000cc(b)(1) by implementing land use regulations in a manner that treats The Way, as a religious assembly and institution, and Mr. Morgan, as a pastor and the executive director of The Way, on less than equal terms with nonreligious assemblies or institutions.

144.    Defendants have, and continue to, violate RLUIPA's Equal Terms provision in its implementation of aforementioned zoning ordinance (codified in Section 2.301(5) of Appendix A of the Jennings Code) and related permitting procedures.

145.    Upon information and belief, a women's shelter that is secular in nature, the "CADA House," exists in a different A-1 zone or historical district in Jennings and has not been subject to the same disparaging treatment as Plaintiffs.

146.    Upon information and belief, the Rice Dryer, which is secular in nature and is located in an industrial zone in Jennings, has not been subject to the same disparaging treatment as Plaintiffs, namely the City and Mayor Guinn's refusal to grant permits or allow any repairs of the Property.

147.    Similar to the Property, the Rice Dryer had sat vacant for a number of years. Similar to the Property, a City code enforcement officer previously submitted letters to the City recommending that the Rice Dryer be repaired or condemned.

148.     Upon information and belief, the City has never condemned the Rice Dryer, despite residents' pleas for such due to its potentially dangerous and unsightly condition.

149.     Upon information and belief, Mayor Guinn has publicly acknowledged that the Rice Dryer's owner has been able to make repairs to the building, and City Inspector Arceneaux has acknowledged the same.

150.     Upon information and belief, Inspector Arceneaux has said that, despite his opinion that the Rice Dryer should be torn down, the City must give the Rice Dryer's owner the opportunity to refurbish or rehabilitate the building so it can become functional again.

151.     In stark contrast to the treatment afforded to the Rice Dryer, the City has refused to offer Plaintiffs a realistic opportunity to rehabilitate the Property. City officials and employees have actively prevented Plaintiffs from merely securing the Property, conducting work to protect the Property from further damage, or even turning its water on, despite the fact that building permits are not required for such work/action.

152.     Plaintiffs are therefore entitled to judgment in their favor for economic, noneconomic, and punitive damages, as well as costs and reasonable attorney's fees.

## COUNT III: VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT
### *42 U.S.C. § 2000cc(b)(2)*
### *Nondiscrimination Claim*

153.     Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

154.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in his personal capacity only*,** have repeatedly violated Plaintiffs' rights recognized under 42 U.S.C. § 2000cc(b)(2) by implementing the aforementioned land use regulations in a discriminatory

manner on the basis of Plaintiffs' religion and/or attempts to exercise their sincerely held religious beliefs.

155.    Mayor Guinn has repeatedly refused to acknowledge that The Way is a religious organization, despite Mr. Morgan's constant assurances that it is such.

156.    Mayor Guinn refused to offer a building for Plaintiffs to rent *if* Plaintiffs used the Property as a church rather than surrendering it to the City.

157.    Mayor Guinn has accused Mr. Morgan of attempting to circumvent laws and ordinances because he is a pastor.

158.    Mayor Guinn has questioned the faith of another pastor, Councilman LeJeune, on the basis of his support for The Way's mission and convictions.

159.    Mayor Guinn's actions further evidence his intent to impose regulations more harshly on Plaintiffs based on their religion and the attempted exercise thereof.

160.    Plaintiffs are therefore entitled to judgment in their favor for economic, noneconomic, and punitive damages, as well as costs and reasonable attorney's fees.

---

### COUNT IV: VIOLATIONS OF THE FAIR HOUSING ACT
### *42 U.S.C. § 3604(a) and (b)*
### *Discrimination in the Sale or Rental of Housing Based on Religion*

---

161.    Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

162.    Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in both his personal and official capacities*,** have violated Plaintiffs' rights recognized under 42 U.S.C. § 3604(a) and (b).

163.    Both the Property and the Armory Building are "dwellings" within the meaning of 42 U.S.C. § 3602(b), as they are:

    a.    Buildings intended for occupancy as a residence; or

    b.    Vacant land offered for sale or lease for the construction thereon of any such building, structure, or portion thereof.

164.    Mayor Guinn has the authority to negotiate the sale and/or rental of property owned by the City.

165.    Plaintiffs are "aggrieved persons" within the meaning of 42 U.S.C. § 3602(i)(1).

166.    The Way, in its capacity as a religious organization, and Mr. Morgan, in his capacity as a pastor and The Way's executive director, belong to a protected class on the basis of religion.

167.    Plaintiffs are qualified to receive services from Defendants, including the potential purchase or rental of City property or negotiations thereof, because of The Way's status as a property owner in the City.

168.    Mayor Guinn and Mr. Morgan discussed the possibility of the City allowing The Way to operate from the Armory Building.

169.    Mayor Guinn intentionally discriminated against Plaintiffs on the basis of their religion in the terms of his proposed rental agreement for the Armory Building.

170.    Those terms were, tentatively, as follows:

    a.    Plaintiffs would have to pay rent in an undetermined amount to the City; *and*

    b.    Plaintiffs would have to confer ownership of the Property to the City.

171.    Upon information and belief, the Armory Building remains available for rent and the City has not expressly prohibited others from negotiating a lease thereof.

172.     Mayor Guinn ultimately denied to Plaintiffs the lease or sale of the Armory Building because Mr. Morgan would not agree to the above unfair and intentionally discriminatory terms.

173.     As such, Mayor Guinn violated 42 U.S.C. § 3604(b).

174.     Upon learning that Plaintiffs would not sell or effectuate a "land swap" of the Property because they planned to use the Property as a church from which to operate The Way, Mayor Guinn refused to continue negotiating the sale and/or rental of the Armory Building.

175.     Specifically, the following recorded verbal exchange occurred between Mayor Guinn and Mr. Morgan on March 6, 2024:

Gerard Morgan: "I'll be happy if you donate the [Armory] Building to me [to house The Way residents]… We'll use our church facility over there on 203 South Louise Street."

Mayor Guinn: "It's not gonna happen."

Gerard Morgan: "If you wanna help us… get us a building, and we'll take it and we'll house [The Way residents there], and we'll have church at 203 S. Louise Street because churches are allowed in a residential area, A-1, according to the zoning."

Mayor Guinn: "Okay, well I guess we don't have much to talk about today. Good talking to you."

176.     Although Mayor Guinn and Mr. Morgan continued to speak after that exchange, Mayor Guinn refused to continue negotiating the sale or lease of the Armory Building if

Mr. Morgan insisted on still using the Property as a church, *regardless* if The Way operated from the Property.

177.    As such, Mayor Guinn violated 42 U.S.C. § 3604(a).

178.    These violations subjected Plaintiffs to disparate treatment under the FHA.

179.    The actions and words of Mayor Guinn demonstrate that it is more likely than not that a discriminatory reason motivated Defendants' actions.

180.    Defendants' actions adversely affected Plaintiffs.

181.    Plaintiffs are therefore entitled to judgment in their favor for economic, noneconomic, and punitive damages, as well as costs and reasonable attorney's fees.

## COUNT V: VIOLATIONS OF THE FAIR HOUSING ACT
### *42 U.S.C. § 3604(f)(1) and (2)*
### *Discrimination in the Sale or Rental of Housing Based on Disability*

182.    Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

183.    Defendants, **THE CITY OF JENNINGS and HENRY GUINN** *in both his personal and official capacities*, have violated Plaintiffs' rights recognized under 42 U.S.C. § 3604(f)(1) and (2).

184.    Prospective students of The Way are "handicapped" within the meaning of 42 U.S.C. § 3602(h) because those individuals have impairments which substantially limit one or more of those individuals' major life activities. The risk of relapse poses a substantial limitation on one's ability to care for himself or herself.

185.     When Mayor Guinn offered to lease Plaintiffs the Armory Building with the discriminatory proposed lease terms explained above, he did so in part because of the handicaps of individuals who intend to reside at the Property.

186.     As such, Mayor Guinn violated 42 U.S.C. § 3604(f)(2).

187.     When Mayor Guinn denied Plaintiffs the opportunity to rent or purchase the Armory Building, he did so in part because he wanted to prevent individuals handicapped by their addictions from residing in that part of the City, despite the Property existing in a residential zone.

188.     As such, Mayor Guinn violated 42 U.S.C. § 3604(f)(1).

189.     Plaintiffs are therefore entitled to judgment in their favor for economic, noneconomic, and punitive damages, as well as costs and reasonable attorney's fees.

## COUNT VI: VIOLATION OF THE FAIR HOUSING ACT
### *42 U.S.C. § 3604(f)(3)(B)*
### *Refusal to Grant Requests for Reasonable Accommodations*

190.     Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

191.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in both his personal and official capacities*,** have violated Plaintiffs' rights recognized under 42 U.S.C. § 3604(f)(3)(B).

192.     Specifically, Defendants discriminated against Plaintiffs by refusing to make reasonable accommodations in rules, policies, and practices, when such accommodations may be necessary to afford those with a disability the equal opportunity to use and enjoy a dwelling.

193.    On October 29, 2024, Plaintiffs sent the City a demand letter asking that, if the City refused to recognize The Way as a church that can operate in the A-1 zone in which it is situated as of right (which the City so refused), it grant The Way the reasonable accommodation of categorizing the Property as a single-family dwelling, a permitted A-1 zone use. Included in this request was the granting of proper building permits.

194.    This demand letter included an explanation of what The Way is and whom it endeavors to help–information Mr. Morgan, council members, and others have made abundantly clear to Mayor Guinn and the City in general numerous times over the span of more than a year.

195.    The demand letter specifically explained that The Way's prospective residents, those who suffer from addiction, have disabilities/handicaps that are recognized by federal statutory law and jurisprudence.

196.    This request was reasonable because the granting of such would have neither imposed undue financial or administrative burdens on the City nor altered the nature of the City's zoning scheme.

197.    Because single-family homes are allowed as of right in the area in which the Property exists, and because the Property had previously been used as a nursing home within a residential district for decades, Plaintiffs' request to have the Property and its proposed use deemed that of a single-family residence would not have altered the City's zoning scheme or changed the character of the neighborhood.

198.    Additionally, granting Mr. Morgan the appropriate building permit for single-family homes would not have imposed any such burdens. Mr. Morgan has expressed his desire to obtain building permits through the proper yet fair channels, and Defendants

actively worked to prevent Mr. Morgan from even being able to submit a proper application for a building permit because Defendants have:

    a.  Provided Mr. Morgan with inaccurate or conflicting information regarding the requirements for building permits;

    b.  Refused to grant Mr. Morgan's permit applications that have comported with all the requirements of which building officials and/or code enforcement officers have advised him; and

    c.  Refused to fully and adequately answer the questions of Mr. Morgan and Plaintiffs' counsel regarding the requirements for obtaining building permits for the Property located within an A-1 zone.

199.    If anything, Defendants have imposed on themselves additional administrative burdens by refusing to grant or clearly outline the actual requirements of obtaining building permits; Defendants have continually pushed the goal post and arbitrarily imposed new and additional requirements on Mr. Morgan over the course of several months rather than simply giving him a clear and accurate answer as to what criteria he must meet to obtain permits.

200.    The requested accommodations described above, as well as the related building permit request, are necessary to afford The Way's prospective student-residents an equal opportunity to use and enjoy the dwelling.

201.    It is essential to the recovery and ongoing sobriety of student-residents to live together in a familial-type environment, which the Property would sufficiently provide to them if Mr. Morgan were granted the appropriate permits to make repairs to the building.

202.    The requested accommodation would both actually alleviate the effects of the prospective student-residents' disabilities and address the needs created by their disabilities.

203.    Defendants have failed to grant this request, as specifically evidenced by, at the very least, the following language used in McGoffin's letter to Plaintiffs' counsel on Nov. 12, 2024:

> "..the City and its officials have accommodated this discussion and afforded Acadiana Cares and The Way every reasonable and realistic opportunity to resolve this matter. However, the relief now requested is inconsistent with those duties."

204.    As such, Defendants have, and continue to, violate 42 U.S.C. § 3604(f)(3)(B).

205.    Plaintiffs are therefore entitled to judgment in their favor for economic, noneconomic, and punitive damages, as well as costs and reasonable attorney's fees.

## COUNT VII: VIOLATION OF THE FAIR HOUSING ACT
*42 U.S.C. § 3617*
*Interference with Exercise of Fair Housing Rights*

206.    Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

207.    Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in both his personal and official capacities*,** have repeatedly violated Plaintiffs' rights recognized under 42 U.S.C. § 3617.

208.    This provision of the FHA makes it unlawful to, among other things, threaten or interfere with any person in the exercise or enjoyment of any right granted or protected by 42 U.S.C. § 3604.

209.    By interfering with Plaintiffs' rights granted and/or protected by that statute as set forth in the previous three (3) counts, Defendants have violated 42 U.S.C. § 3617.

210.    By threatening Mr. Morgan with litigation and the further inability to use the Property at times in which Mr. Morgan was exercising his aforementioned rights under the FHA, Mayor Guinn has violated 42 U.S.C. § 3617.

211.    Additionally, on November 13, 2024, Special Counsel McGoffin sent Plaintiff's counsel a letter in response to Plaintiffs' counsel's October 29, 2024, letter. Therein, Special Counsel McGoffin wrote that the City shall "proceed to enforce the Notice to Cease and Desist Activity" that the City had previously imposed on Plaintiffs.

212.    Special Counsel McGoffin further wrote that the City shall, "commence condemnation and demolition proceedings."

213.    Special McGoffin's representations constitute two (2) additional threats by the City based on Plaintiffs' enjoyment of the rights granted and/or protected by 42 U.S.C. § 3604.

214.    Plaintiffs are therefore entitled to the following relief:

a.    A permanent injunction enjoying the City, its officers, employees, agents, attorneys, successors, and all persons in active concert or participating with any of them from enforcing the Notice to Cease and Desist Activity and to prevent the commission of condemnation and demolition proceedings;

b.    Judgment in their favor for economic, noneconomic, and punitive damages; and

c.    Costs and reasonable attorney's fees.

*{Remainder of Page Intentionally Left Blank}*

---

## COUNT VIII: VIOLATIONS OF AMERICANS WITH DISABILITIES ACT
### *42 U.S.C. § 12102, et. seq.*

---

215.     Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege  all previous paragraphs as though fully set forth herein.

216.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in his official capacity only*,** have violated Plaintiffs' rights under the Americans with Disabilities Act.

217.     The prospective students of The Way are qualified individuals with disabilities within the meaning of the ADA. 42 U.S.C. § 12102, 42 U.S.C. § 12131(2), and 28 C.F.R. §35.104.

218.     The City is a public entity within the meaning of the ADA. 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

219.     Defendants' actions constitute discrimination that violates Title II of the ADA., 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35, by:

   a.  Excluding these individuals with disabilities from participation in and/or denying them benefits of the services, programs, or activities of the City based on their disabilities;

   b.  Limiting these individuals' enjoyment of rights, privileges, advantages, and opportunities enjoyed by others.;

   c.  Failing to make reasonable modifications in policies, practices, or procedures to avoid discrimination on the basis of disability;

   d.  Utilizing administrative methods that have the effect of subjecting these individuals to discrimination on the basis of their disabilities; and

e.  Excluding or otherwise denying equal services, programs, or activities to Plaintiffs because of the known disabilities of these individuals with whom Plaintiffs are known to have an association.

220.     Plaintiffs are therefore entitled to judgment in their favor for economic, non-economic, and punitive damages, as well as costs and reasonable attorney's fees.

---

**COUNT IX: VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION,  PURSUANT TO *42 U.S.C. § 1983***
***Unreasonable Search Claim***

---

221.     Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege  all previous paragraphs as though fully set forth herein.

222.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in his official and personal capacities*,** under the color of law, have violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution.

223.     On March 4, 2024, individuals entered Plaintiffs' locked building on the Property.

224.     Upon information and belief, City officials and/or individuals working in concert therewith entered the Property for the purpose of inspecting it for asbestos.

225.     Upon information and belief, City officials and/or employees contracted with a third party, AES, to conduct the inspection.

226.     Neither Mr. Morgan, nor any representatives of himself or of The Way, authorized anyone to enter the Property or conduct such an inspection.

227.     Neither Mr. Morgan, nor any representative of himself or of The Way, were notified of this planned inspection prior to or during the same.

228. Upon information and belief, neither Defendants, nor individuals working in concert therewith, lawfully obtained authorization to enter the Property and inspect the building, either by way of civil search warrant, Fire Marshal authorization, or otherwise.

229. Upon information and belief, Inspector Arceneaux, at the behest of or on the behalf of the City, had contacted third parties to inquire about having an asbestos report done on the Property because the City was "preparing to demolish the building."

230. The City Council has not taken action to initiate condemnation or demolition proceedings against the Property since Plaintiffs acquired ownership of the Property.

231. This search was neither legal nor reasonable under the Fourth Amendment, as the search was not pursuant to a warrant or other legal authority–a requirement for such searches of business and residential premises. See *See v. City of Seattle*, 387 U.S. 541, at 1740-41 (1967).

232. Plaintiffs are therefore entitled to the following relief:

   a. A permanent injunction enjoying the City, its officers, employees, agents, attorneys, successors, and all persons in active concert or participating with any of them from unlawfully entering and/or inspecting the Property;

   b. Judgment in their favor for economic, noneconomic, and punitive damages; and

   c. Costs and reasonable attorneys fees.

---

## COUNT X: VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION,  PURSUANT TO *42 U.S.C. § 1983* *Substantive Due Process Claim*

---

233. Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege  all previous paragraphs as though fully set forth herein.

234.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN** *in his official and personal capacities*, under the color of law, have violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

235.     Defendants did so by depriving Plaintiffs of their constitutionally protected property interests in manners that were arbitrary, capricious, wrong, and without a rational basis.

236.     Defendants did so through adjudicatory, rather than legislative, acts.

237.     Plaintiffs have a constitutionally protected right to use and enjoy their property, namely, the Property at 203 S. Louise Street.

238.     The City has determined that the Property lost its nonconforming use and therefore must, absent a successful rezoning of the Property, adhere to rules promulgated to regulate the use of properties in A-1 zones.

239.     Section 2.301(5) of Appendix A of the Code permits churches in the area in which the Property is zoned.

240.     Despite Defendants' awareness and knowledge of the fact that The Way is a religious organization, coupled with Defendants' admissions that churches are allowed in that area,  Defendants refuse to allow Plaintiffs to operate from the Property.

241.     Additionally, Defendants have refused to allow Mr. Morgan to obtain the permits necessary to repair the Property to ultimately make it suitable for occupancy.

242.     Further, Defendants have prohibited Mr. Morgan and his associates from conducting repairs on the Property that do not require any permits, City authorization, or Fire Marshal authorization, including but not limited to, making cosmetic repairs and securing the building from further damage.

243.    Defendants have no authority to deny the existence of a church in an A-1 zone, as churches are expressly permitted by the Code.

244.    Defendants similarly have no authority to prohibit Mr. Morgan and his associates from conducting repairs on the Property that require no permit or other authorization.

245.    In so acting, Defendants have effectively prevented Plaintiffs from any meaningful use and enjoyment of the Property they own.

246.    Defendants have acted arbitrarily and capriciously in that their actions were not pursuant to any law, authority, or legitimate governmental purpose, and in that they have not subjected other groups and individuals to the same treatment.

247.    Upon information and belief, Defendant has not subjected other churches or single-family residences in A-1 zones to the treatment it has subjected Plaintiff to.

248.    Plaintiffs are therefore entitled to the following relief:

a.    A permanent injunction enjoying the City, its officers, employees, agents, attorneys, successors, and all persons in active concert or participating with any of them from harassing Plaintiffs and preventing Plaintiffs from using and enjoying the Property;

b.    Declaratory judgment that The Way can operate as of right in the A-1 zone due to its ability to be classified as a church and/or a single-family dwelling;

c.    Judgment in their favor for economic, noneconomic, and punitive damages; and

d.    Costs and reasonable attorneys fees.

---

**COUNT XI: VIOLATIONS OF EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, PURSUANT TO *42 U.S.C. § 1983***
*Selective Enforcement and Personal Vindictiveness Claims*

---

249.     Plaintiff, **GERARD MORGAN**, restates and realleges all previous paragraphs as though fully set forth herein.

250.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in his official and personal capacities*,** under the color of law, have violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

251.     Defendants' actions toward Plaintiff were motivated by ill will or an improper animus, deliberately based upon an unjustifiable standard, namely, Plaintiff's status as a pastor who seeks to help those suffering from the disability of addiction.

252.     To the extent that Defendants' actions have been motivated by this ill will or improper animus, Plaintiff is entitled to treatment as a "class of one" for equal protection analysis and maintains that there is no rational basis to justify the deferential treatment Defendants have subjected Plaintiff to.

253.     Defendants have perpetuated a discriminatory, selective application and enforcement of the Code by:

a. Refusing to allow Plaintiff to operate The Way at the Property as a church;

b. In the alternative, refusing to deem the Property a single-family residence; and

c. Imposing on Plaintiff arbitrary requirements to obtain building permits that do not exist in the Code.

254.    Defendants have perpetuated a discriminatory, selective application of the City's processes and procedures by:

    a.  Prohibiting Plaintiff from conducting work that does not require a building permit;

    b.  Attempting to dissuade Plaintiff from exercising codified rezoning procedures;

    c.  Attempting to charge Plaintiff more than double the actual price for the City to turn water on at the Property; and

    d.  Denying Plaintiff's request to get water at the Property for inexplicable reasons.

255.    Defendants had no rational basis to treat Plaintiff in such a manner.

256.    Upon information and belief, operators and inhabitants of the CADA House, a women's shelter in an A-1 and/or historical district, were not subjected to the following treatment Defendants subjected Plaintiff to:

    a.  Refusal to allow operation in the A-1 zone; and

    b.  Incessant, harassing interrogations regarding who the residents will be.

257.    Upon information and belief, the owner of the Rice Dryer, a dilapidated building that predates the existence of the City's zoning ordinances, was not subjected to the following treatment Defendants subjected Plaintiff to:

    a.  Attempts to force owner to rezone the property or comport with other regulations after its use changed;

    b.  Imposing requirements that are arbitrary or not listed in the Code to obtain building permits;

    c.  Prohibiting owner from conducting work that does not require a building permit; and

    d.  Illegal, unauthorized entry onto and searches of his property.

258.    Defendants treated Plaintiff differently from others similarly situated because of Defendants' ill will and animus toward Plaintiff.

259.    Alternatively, or additionally, Defendants' actions toward Plaintiff were motivated by a vindictive animus toward him based on some arbitrary consideration, including but not limited to his associations with religion and those with certain disabilities.

260.    As a specific example of Mayor Guinn's personal vindictiveness, in  early 2024, Mayor Guinn said the following to Councilman LeJeune: "You can put Gerard Morgan out of the picture now. I think there's a general consensus of, not only are we going to support a rehabilitation, we're going to support anyone but Gerard Morgan… and we're gonna fund it, and not only are we gonna do it, we're gonna do it ten times better than him."

261.    As another example of Mayor Guinn's personal vindictiveness, in early March 2024, after Plaintiff refused to surrender the Property to the City in an inequitable "land swap," Mayor Guinn sent a text message to Plaintiff, insinuating that because Mayor Guinn paid more than $7,000 for his children to attend Northside Christian Academy, a private school ran by the church at which Plaintiff is an associate pastor, that he was entitled to the aforementioned land swap. Upon information and belief, Mayor Guinn has since failed to re-enroll his children in the school, presumably as a result of Plaintiff's refusal to forfeit the Property.

262.    Defendants have repeatedly expressed their personal animus toward Mr. Morgan, which has risen to the level of vindictive treatment that has prevented Plaintiffs from using their own Property, using said Property in a manner granted as of right by the Code, and carrying out their sincerely held religious beliefs at the Property.

263.     Such vindictive treatment conducted by Mayor Guinn and ratified by the City has culminated into the harassment and public slander of Mr. Morgan and others associated with The Way.

264.     Mr. Morgan has been harmed by Defendants' deferential, discriminatory treatment.

265.     Defendants' conduct violates constitutional protections safeguarding individuals from such inequity.

266.     Plaintiff is therefore entitled to judgment in his favor for economic, noneconomic, and punitive damages, as well as costs and reasonable attorneys fees.

---

### COUNT XII: TRESPASSING, PURSUANT TO *LA Civ. Code Art. 2315*
### *Civil Trespass Tort Claim*

---

267.     Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, restate and reallege all previous paragraphs as though fully set forth herein.

268.     Defendants, **THE CITY OF JENNINGS and HENRY GUINN *in his official and personal capacities*,** have caused Plaintiffs to suffer damages as a result of its illegal and intentional trespass of the Property.

269.     Defendants or their representatives entered or were instructed to enter the Property on March 4, 2024, for the purpose of conducting an illegal inspection.

270.     Mr. Morgan had locked the building on the Property the previous day, yet Defendants or their representatives entered the locked building.

271.     Neither Plaintiffs, nor their agents, gave anyone the authority to enter the Property.

272.     This trespass constituted an invasion of Plaintiffs' privacy.

273.     This trespass caused Mr. Morgan to endure mental and emotional suffering.

274.    Defendants are liable to Plaintiff for said damages, pursuant to La. Civ. Code art. 2315.

275.    Plaintiffs are therefore entitled to judgment in their favor for economic and noneconomic damages, as well as costs and reasonable attorney's fees.

---

### COUNT XIII: DEFAMATION, PURSUANT TO *LA Civ. Code Art. 2315*
### *Defamation Per Se Claim*

---

276.    Plaintiff, **GERARD MORGAN**, restates and realleges all previous paragraphs as though fully set forth herein.

277.    Defendant, **HENRY GUINN *in his official and personal capacities*,** has caused Plaintiff to suffer damages as a result of his defamatory publications.

278.    On July 3, 2024 and July 4, 2024, Defendant posted comments to posts in the "Jennings, La Free Speech" Facebook group from his personal Facebook account.

279.    His comments contained words that expressly or implicitly accused Plaintiff of criminal conduct, or that, by their very nature, tend to injure one's reputation.

280.    When someone makes statements containing such language, the elements of falsity and malice (or fault) are presumed. *See Farber v. Bobea*r, 56 So.3d 1061, 1066 (La. Ct. App. 4 Cir., 2011).

281.    Defendant commented the following statements on the July 2, 2024, post:

   a.    "We offered The Way the national gaurd armory for free." (Defendant explicitly offered to lease, for a rate, the Armory Building);

   b.    "Gerard Morgan denied our request and said he was building a church with or without the city's support." (Plaintiff denied no such request to receive the Armory

Building for free. To the contrary, Plaintiff offered to accept it as a donation, and Defendant refused to donate it);

c. "We're trying to keep peace among lifelong residents of Jennings that do not want a drug rehabilitation clinic in a residential setting." (The Way is not a drug rehabilitation clinic, nor does it or will it offer rehabilitation services);

d. "...the property is A1 residential. Which means no drug rehab because it isn't zoned properly." (The Way is a church that can exist as of right in an A-1 zone, which Plaintiff had repeatedly told Defendant);

e. "Obviously if it [the Property] is set for demolition there's neglect and this could magnify unnecessary expenses to taxpayers" (the Property is not set for demolition);

f. "But you and your team refuse to acknowledge the neighborhood is residential and they do not want a drug rehabilitation clinic in that area." (The Way is not a drug rehabilitation clinic);

g. "Gerard Morgan, I'm no building code inspector but this looks like you're working toward a brand new roof." (attached to photos Defendant or took or otherwise obtained from a drone flying above associates of Plaintiff conducting work that does not require a permit on the Property's roof); and

h. "Gerard Morgan the general public knows what they're up against too."

282.    Defendant commented the following statement on the July 3, 2024, post:

a. "Based on those [drone] images you've also decided to build a drug rehabilitation clinic in a residential area with or without consent." (Plaintiff is not building a drug

rehabilitation center, and he does not need "consent" to build a church that can exist as of right in an A-1 zone).

283.    These factually incorrect and negligently or maliciously made comments tended to injure Plaintiff's reputation, especially because they came from the mayor of the City, someone with a great deal of power and influence.

284.    One example of this effect is evidenced by this statement Jennings resident Rochelle Sittig commented on the July 3, 2024, post:

 a.  "This page is actually working in Henry's favor. It is exposing the behavior of your people that claim to be Godly when in fact the hate that you all spew, is anything by Godly."

285.    As a result of Defendant's published knowingly false or misleading statements, Plaintiff has suffered injury to his reputation.

286.    Plaintiff is therefore entitled to judgment in his favor for economic and noneconomic  damages, as well as costs and reasonable attorneys fees.

---

## DAMAGES

---

287.    As a result of the actions of the Defendants as described herein, Plaintiffs have incurred the following damages:

 a.  Loss of use and enjoyment of property;

 b.  Emotional distress and mental anguish;

 c.  Reputational harm;

    d.   Damages arising out of the March 2024 burglary of the Property, which resulted because of Defendants' refusals to allow Plaintiff to do the work necessary to secure the Property; and

    e.   Special damages, including but not limited to, attorney's fees and other expenses in the course of seeking to petition the Defendants to act in conformity with the law and to recover damages for Defendants' actions.

---

## PRAYER

---

**WHEREFORE**, Plaintiffs, **THE WAY TRAINING CENTER and GERARD MORGAN**, pray that Defendants be duly cited to appear and answer this Complaint and be served with a copy thereof, and that after due proceedings are had and the lapse of all legal delays, there be judgment in Plaintiffs' favor and against Defendants individually and jointly, as follows:

I.    Compensatory, nominal, and punitive damages;

II.    All declaratory and injunctive relief remedying or rectifying Defendants' wrongful actions as described herein;

III.    Reasonable attorney's fees,  as provided in 42 U.S.C. § 1988, and all costs of the proceedings, together with legal interest thereon;

IV.    An order for any and all other appropriate relief; and

V.    All other relief as appears just and proper to this Honorable Court.

*{Remainder of Page Intentionally Left Blank}*

---

## DEMAND FOR JURY TRIAL

---

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand a trial by jury in this action of all issues so triable.

Respectfully Submitted,

**SUDDUTH & ASSOCIATES, LLC**
1109 Pithon Street
Lake Charles, Louisiana 70601
Tel: (337) 480-0101
Fax: (337) 419-0507
Email: *james@saa.legal*

*/s/ James E. Sudduth, III*
**JAMES E. SUDDUTH, III, #35340**
*Counsel for Plaintiffs*
